THE HONORABLE RICARDO S. MARTINEZ
Sentencing: February 4, 2016 at 11:00 a.m.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>DAVID RICHARD DANCE,<br><br>　　　　　　　Defendant. | NO. CR15-00349RSM<br><br>DEFENDANT RICHARD DANCE'S SENTENCING MEMORANDUM |

## INTRODUCTION

Pursuant to his plea to a one count Information charging wire fraud, David Richard Dance (who goes by Richard) is scheduled to be sentenced by this Honorable Court on Thursday, February 4, 2016, at 11:00 am. The applicable guideline provisions are not in dispute. Probation has recommended a sentence including 18 months imprisonment. As of this filing, the Government has not presented a sentencing memorandum but has previously agreed to recommend no more than 51 months imprisonment. The defense respectfully requests a sentence of 12 months and 1 day imprisonment with voluntary reporting and a placement

DANCE SENTENCING MEMORANDUM (CR15-00349RSM)　-　1

Law Offices of Cassandra Stamm, PLLC
The Central Building
810 Third Avenue, Suite 500
Seattle, Washington 98104
tel: (206) 264-8586
fax: (206) 447-1427

recommendation at FCI Sheridan and submits this memorandum in support of this sentencing recommendation.

**BACKGROUND FACTS**

Richard Dance is a sixty-four year old husband, father of eight, and grand-father of seventeen (and counting) with no criminal history whatsoever.  He has been happily married to the same woman, Julienne Dance, for over forty years.  Richard Dance has spent his life nurturing his family and serving his community.

Richard Dance was the oldest son in a large family.  Letters from Richard Dance's younger brothers and sisters as well as their spouses and his other in-laws are attached as Appendix A.  These letters speak to Richard's early and ongoing history of reaching out to others in need among his community in both big and small ways.  *See,* App. A.  Richard Dance was always a mentor to his younger siblings.  *See, id.*  When he left home at the age of nineteen on a mission for his church in Germany, a young Richard Dance took his camera and a passion for photography.  *Id.*  Several of his siblings remember when Richard later wrote home explaining that he had given his camera away because he felt he was spending too much time taking pictures and not enough time focusing on his service.  *Id.*  This early dedication to service and faith has not faded in Richard Dance in the years since.

Richard and Julienne Dance met, married, and started their family when they were both quite young.  From their beginnings together and continuing today, Richard Dance and his family have served their community in a very personal way, by bringing those in need into their home.  Attached hereto as Appendix B is a letter from Richard Dance's wife, Julienne Dance, including a list of no less than eighteen people the Dances have welcomed into their home for significant stretches over the past thirty years.  While they were raising eight children of their

*DANCE SENTENCING MEMORANDUM*  (CR15-00349RSM)   −   2

Law Offices of Cassandra Stamm, PLLC
The Central Building
810 Third Avenue, Suite 500
Seattle, Washington 98104
tel:  (206) 264-8586
fax:  (206) 447-1427

own, Julienne and Richard Dance took in a host of people in need ranging from a whole family of four Cambodian refugees (who lived with them for the better part of a year), exchange students, unwed mothers, drug addicts, as well as troubled teenagers and their family members. App. B.  Reed Wilcox was one of the persons taken in by the Dances.  In Appendix C, Mr. Wilcox explains the profound impact Richard and Julienne Dance have had on his life.  Reed Wilcox writes that he considers Richard Dance both a real life hero and a second father.  App. C.

Richard and Julienne Dance created a household of faith, compassion, and service in which they raised eight successful children.  Letters from Richard Dance's children are attached as Appendix D.  As related therein, the Dance children now range from age 21 to 40 years.  *Id*.  All the boys were Eagle Scouts.  *Id*.  They count among them two pediatric dentists, an ophthalmologist, and a pediatric interventional radiologist.  *Id*.  The lives the Dances have helped all their children build are a testament to the consistent and good character of Richard and Julienne Dance.  Their children describe a loving family led by a father who taught them compassion, kindness, and the value of service by example.  *Id*.

As in his home, Richard Dance's deeds outside the home have and continue to demonstrate his compassionate and generous nature and character.  Attached hereto as Appendix E are letters from Richard Dance's business and community colleagues including the mayor of Hayden, Idaho (where Richard and Julienne Dance currently live).  These letters speak eloquently to Richard Dance's ongoing and current service in a community that is very much aware of the instant prosecution.  *Id*.  As just one example, Richard is currently working hard to develop a non-profit organization dedicated to better protecting youth athletes from concussions and related injuries.  *Id*.

*DANCE SENTENCING MEMORANDUM*  (CR15-00349RSM)   −  3

Law Offices of Cassandra Stamm, PLLC
The Central Building
810 Third Avenue, Suite 500
Seattle, Washington 98104
tel:  (206) 264-8586
fax:  (206) 447-1427

So how does a man with this type of nature and background end up before the Court in this posture?  As described by those who know him best, the situation is a tragic irony of sorts.  The nature of Richard Dance's offense is discussed in detail in his plea agreement and below.  In summary, Richard Dance ran a company used by persons and businesses to facilitate tax-deferred exchanges of real property in part by holding large sums of money for periods of time.  The law governing such exchange businesses allowed investment of such sums during the holding period and when Richard Dance (like many others) developed concerns about the banking industry as a guarantor of these funds, he made a series of investments.   Though it was not his only bad investment, in the end Richard Dance's business failed due to a fraud perpetrated on him by a man named Brett Amendola.

Importantly, Richard Dance did not just run off with his clients' money.  He did not 'invest' their money in his own bank accounts.  Rather, he lost 1031 ECI LLC's clients' money to bad investments including a fraud of which *he* was the victim.  Richard Dance's crime was failing to disclose to his clients that their funds were at risk in the first instance.  He never intended for his clients to lose money but of course that was the end result of his actions and given as much, his intention does not now make any practical difference to the victims of this offense.  Because he is an honorable and honest man by nature, Richard Dance has admitted to his fault herein, timely pleading guilty and accepting responsibility for this offense.  As Richard Dance has written the Court: "I am accountable for that [the impact on his clients], don't blame anyone else, and am the only one that could have made a difference."

## ARGUMENT

In sentencing Richard Dance, the Court must consider the United States Sentencing Guidelines as well as the factors laid out at 18 U.S.C. § 3553.  The parties agree the guideline

DANCE SENTENCING MEMORANDUM  (CR15-00349RSM)   −  4

Law Offices of Cassandra Stamm, PLLC
The Central Building
810 Third Avenue, Suite 500
Seattle, Washington 98104
tel:  (206) 264-8586
fax:  (206) 447-1427

range is 51-63 months imprisonment. But this guideline range is not mandatory and need not even be presumed to be reasonable in this case. *See, Nelson v. United States,* 555 U.S. 350, 352 (2009). The Court must ultimately fashion a sentence that is sufficient, but not more than necessary, considering the following factors:

>  (1)    the nature and circumstances of the offense and . . . the defendant;
>  (2)    the need for the sentence imposed—
>         (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>         (B)    to afford adequate deterrence to criminal conduct;
>         (C)    to protect the public from further crimes of the defendant; and
>         (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>  (3)    the kinds of sentences available;
>  (4)    the kinds of sentence and the sentencing range established . . .;
>  (5)    any pertinent policy statement . . .
>  (6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>  (7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553; *see also, United States v. Carty,* 520 F.3d 984, 991 (9th Cir.), *cert. denied,* 553 U.S. 1061 (2008). The resulting sentencing determination is of necessity "a difficult art" based on "this particular person and the circumstances of the crime that this particular person has committed." *United States v. Diaz-Argueta,* 447 F.3d 1167, 1172 (9th Cir. 2006), *cert. denied,* 558 U.S. 1047 (2010).

A.    **The Nature and Circumstances of the Offense.  18 U.S.C. § 3553(1).**

As admitted and explained in the parties' plea agreement, for over six years ending in January of 2012, Richard Dance ran 1031 ECI LLC, a company facilitating tax-deferred exchanges of real property in part by holding the proceeds of investment property sales until such funds could be reinvested in like-kind property. Many, many clients were served and many millions of dollars were handled securely by Richard Dance over the majority of these six years.

DANCE SENTENCING MEMORANDUM (CR15-00349RSM) − 5

Law Offices of Cassandra Stamm, PLLC
The Central Building
810 Third Avenue, Suite 500
Seattle, Washington 98104
tel: (206) 264-8586
fax: (206) 447-1427

Until 2008, funds transferred to 1031 ECI LLC by the exchangers were held almost exclusively in FDIC insured bank accounts. At various times in 2008, 1031 ECI LLC had between twenty and forty million dollars deposited with Frontier Bank amounting to up to 4% of the bank's total cash deposits. The bank was insured but FDIC insurance generally only covers $250,000 per depositor. Given the instability of the entire banking industry during this period, large depositors like 1031 ECI LLC began to look for safer, more diversified options for their deposits.

The law allows exchange facilitators like 1031 ECI LLC to invest exchange funds in a manner that meets a prudent investor standard and satisfies the investment goals of liquidity and preservation of principal. *See,* RCW § 19.310.080. In 2008, Richard Dance began investing some of 1031 ECI LLC's deposits. He chose investments be believed would not cause the funds to become illiquid and would preserve principal. Most of these investments did just that.

In 2011, Richard Dance was introduced to Brett Amendola by a friend. Mr. Amendola represented to Richard Dance:

> that he was developing a golf course and needed what he called "show money" to finalize the project. On behalf of 1031 ECI, defendant executed a written agreement titled "Irrevocable Trust Agreement" whereby 1031 ECI would transfer funds to an account where it would remain and serve as Amendola's 'show money' for a few weeks. Amendola represented the account was an escrow account, only Defendant could withdraw funds therefrom, and Defendant could retrieve the funds at any time.

Plea Agreement at p.5. The investment seemed ideal for 1031 ECI LLC since liquidity was supposedly assured and loss of principle was purportedly impossible. Unbeknownst to Richard Dance, when Amendola provided wiring instructions for the 'escrow account' he substituted a similarly named account that belonged to him personally instead of an escrow company. Using this artifice, Amendola stole more than a million dollars from 1031 ECI LLC.

*DANCE SENTENCING MEMORANDUM* (CR15-00349RSM) – 6

Law Offices of Cassandra Stamm, PLLC
The Central Building
810 Third Avenue, Suite 500
Seattle, Washington 98104
tel: (206) 264-8586
fax: (206) 447-1427

Using telephones and email addresses designed to appear as if they originated from an escrow company, forged escrow letterhead, and forged signatures, for months Amendola continued the fraud offering elaborate excuses for the unavailability of the funds and promising they would still be returned as originally promised.  When Richard Dance was eventually contacted by the FBI about Amendola's fraud, he readily cooperated.  Amendola and a coconspirator, Jerry McKerac, were both prosecuted and sentenced to 84 and 6 months in prison respectively.[1]  Amendola was ordered to pay restitution to seven of the thirteen victims herein.[2]

These facts significantly distinguish the circumstances of Richard Dance's fraud from many others that come before this Court.  Richard Dance did not succumb to greed, drug addiction, or some other vice causing him to perpetrate this fraud.  As his son Jeff Dance relates in his letter to the Court, Richard Dance was struggling to keep his business afloat and his clients' funds secure during a very difficult economic time.[3]  App. D.  Richard Dance made investment decisions he believed were warranted and sound under the circumstances.  He believed and trusted these decisions would ultimately pan out in part because of Amendola's ongoing fraudulent representations but also because of his many years of successful experience in the industry.

Richard Dance did not profit from this fraud while his clients suffered.  Richard and Julienne Dance have never lived any sort of high life or enjoyed particularly fancy things.

---

[1] *See, United States v. Brett A. Amendola,* United States District Court, Eastern District of Virginia, Cause No. 1:12-CR-00116-GBL-1; *United States v. Jerry J. McKerac,* United States District Court, Eastern District of Virginia, Cause No. 1:13-CF-00110-LO-1.

[2] *Amendola,* docket sub. no. 63-1.

[3] In Gladys J. Van Peursem's victim impact statement, Ms. Van Peursem notes that Richard Dance's son Jeff Dance "is working out of the same office that 1031 ECI, LLC did in Bellevue – another coincidence."  The insinuation is unclear but Jeff Dance worked out of this same location (at his own business, Fresh Consulting) while 1031 ECI LLC was active and continued on once it was no longer active.  There is no nefarious untold alternative explanation.

DANCE SENTENCING MEMORANDUM  (CR15-00349RSM)   –   7

Law Offices of Cassandra Stamm, PLLC
The Central Building
810 Third Avenue, Suite 500
Seattle, Washington 98104
tel:  (206) 264-8586
fax:  (206) 447-1427

When 1031 ECI LLC failed, Richard Dance lost his business, the company was forced into bankruptcy, and Richard and his wife filed for personal bankruptcy. They lost their home of thirty-five years. As his children have described, Richard Dance has experienced complete financial ruin as a result of his bad investments on behalf of 1031 ECI LLC. Probation has recognized that, as a result, Richard Dance is financially unable to pay any fine. He owns one parcel of property estimated to be worth $90,000 and he has agreed to liquidate this property for purposes of restitution herein.

B.      The Nature and Circumstances of the Defendant.  18 U.S.C. § 3553(1).

Richard Dance is a kind and compassionate husband, father, grandfather, brother, brother-in-law, friend, community member, and business colleague.[4] The dozens of letters appended hereto do a far better job at proving and explaining this than counsel could ever attempt. Perhaps Richard Dance's age and complete lack of criminal history are not all that unusual. But what other defendant comes before this court with Richard Dance's demonstrated record of public service? What other defendant can lay claim to bringing eighteen people in need to live in his home with his wife and children over the years? Indeed who among us can say they have done the same or the equivalent?

Richard Dance's circumstances are truly extraordinary in this respect. Considering these circumstances as well as the circumstances of the offense, then, the Court must determine what sentence will be sufficient but not more than necessary.

///

---

[4] In Yvonne Vierthaler's victim impact statement, Ms. Vierthaler argues Richard Dance is a threat to the community because "he is still allowed to practice, and from what we understand is currently doing so in Idaho." Richard Dance has not served as an exchange facilitator since 1031 ECI LLC closed its doors in January 2012. As verified by pretrial services in their release status report, Mr. Dance has been employed as a tax planner, assisting individuals with tax returns and he also does bookkeeping.

DANCE SENTENCING MEMORANDUM  (CR15-00349RSM)   −  8

Law Offices of Cassandra Stamm, PLLC
The Central Building
810 Third Avenue, Suite 500
Seattle, Washington 98104
tel:  (206) 264-8586
fax:  (206) 447-1427

C.  **The Need for the Sentence Imposed to Further the Purposes of Sentencing. 18 U.S.C. § 3553(1).**

The Court sentences persons who have committed criminal offenses to reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence, and protect the public. 18 U.S.C. § 3553(2). To be sure, Richard Dance's offense was serious. By failing to disclose to his clients that their funds were at risk, he obtained funds that these clients would not otherwise have entrusted to him. The amount of money lost as a result was significant, over three million dollars. The law prohibits as much and rightfully so.

But the punishment must also be just. 18 U.S.C. § 3553(2)(A). Probation recommends that Richard Dance serve 18 months in prison followed by 3 years supervised release including Moral Reconation Therapy. It seems somewhat nonsensical to suggest a man like Richard Dance needs Moral Reconation Therapy but the recommendation is presumably included because it is generally included in these types of cases. Likewise, imprisonment is generally imposed in fraud cases with similar loss amounts. Carefully considering the latter, the defense has resisted the temptation to ask for less than a year and a day in prison. Recognizing that the offense is serious and some term of imprisonment may be necessary to reflect the same, promote respect for the law that has been broken, and afford adequate deterrence, the defense has recommended a sentence including a term of imprisonment.

The Charles Colson Task Force on Federal Corrections' final recommendations, issued just this week bears noting in this respect.[5] This task force is a bipartisan blue ribbon panel charged with developing practical, data-driven recommendations to enhance public safety by creating a more just and efficient federal corrections system. The task force began by noting the

---

[5]   A complete copy of the Colson report is available here:  http://www.urban.org/sites/default/files/alfresco/publication-pdfs/2000589-Transforming-Prisons-Restoring-Lives.pdf

DANCE SENTENCING MEMORANDUM  (CR15-00349RSM)   −  9

Law Offices of Cassandra Stamm, PLLC
The Central Building
810 Third Avenue, Suite 500
Seattle, Washington 98104
tel: (206) 264-8586
fax: (206) 447-1427

tremendous financial burden created by the growth and size of the Bureau of Prisons as well as the serious toll incarceration exacts on the social fabric and vibrancy of communities.  With these concerns in mind, the task force's first recommendation is to reserve prison for those convicted of the most serious federal crimes such that the highly punitive, costly, and potentially harmful intervention of incarceration is used sparingly and judiciously.  In particular, the task force recommends encouraging and incentivizing alternatives to incarceration.

Especially considering these recommendations alongside the nature and circumstances of this offense and this defendant, the recommended term of imprisonment should be ample to further the purposes mentioned above.  Such a sentence sends a powerful message that even a man who has done as much for his community as Richard Dance will be punished with loss of liberty for transgressing the law.  Such a sentence underscores the fact that even a man like Richard Dance with no criminal history whatsoever can be punished severely for a first offense.

And make no mistake, such a sentence will affect Richard Dance acutely.  Given the size of his family, he will miss numerous birthdays not to mention anniversaries and holidays.  Given his family's current expansion he could easily miss the birth of a grandchild or other more distant relative.  He will no doubt find a way, more likely many ways, to make himself of service while he is incarcerated, but the experience will still be painful for him especially since his loved ones will undoubtedly suffer and they have done nothing to warrant the same.

D.    Restitution.

Richard Dance has agreed to make restitution in an estimated amount and the parties have been cooperating to determine the precise individuals and entities harmed, and the amounts due to each.  The offense concluded in January of 2012 and since then there have been personal and corporate bankruptcies and payouts, civil lawsuits and settlements paid by Richard

DANCE SENTENCING MEMORANDUM (CR15-00349RSM) - 10

Law Offices of Cassandra Stamm, PLLC
The Central Building
810 Third Avenue, Suite 500
Seattle, Washington 98104
tel: (206) 264-8586
fax: (206) 447-1427

Dance and his marital community, as well as civil lawsuits and settlements paid on behalf of 1031 ECI LLC by their insurance company.  As of this writing, it is unclear whether the parties will be able to make all the necessary determinations regarding restitution prior to sentencing.[6]  If this does not occur, the parties intend to ask to set just this restitution matter over for final determination following Mr. Dance's sentencing on February 4, 2016.

## CONCLUSION

For all these reasons and in the interests of justice, the defense respectfully requests the Court sentence him to no more than 12 months and 1 day imprisonment.  Mr. Dance further requests that the Court allow him to voluntarily report and recommend placement at FCI Sheridan.

DATED this 27th day of January, 2016.

/s/ Cassandra Stamm
WSBA No. 29265
Attorney for David Richard Dance
810 Third Avenue, Suite 500
Seattle, WA  98104
tel:  (206) 264-8586
fax:  (206) 447-1427
casey@seattlecriminalattorney.com

---

[6] These determinations have been more difficult than initially anticipated for several reasons.  For example, in William H. Levings' victim impact statement, Mr. Levings seeks restitution noting he has "received partial recovery from the suit against the insurance company – this is a sealed record."  The insurance recovery would not affect the total amount of restitution owed but it would affect to whom it is owed.  Neither the Government nor the defense currently know the amounts of such sealed recoveries.

DANCE SENTENCING MEMORANDUM  (CR15-00349RSM)   -  11

Law Offices of Cassandra Stamm, PLLC
The Central Building
810 Third Avenue, Suite 500
Seattle, Washington 98104
tel:  (206) 264-8586
fax:  (206) 447-1427

**CERTIFICATE OF SERVICE**

I hereby certify that on January 27, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the Government and codefendants.

/s/ Cassandra Stamm  
WSBA No. 29265  
Attorney for David Richard Dance  
810 Third Avenue, Suite 500  
Seattle, WA 98104  
tel: (206) 264-8586  
fax: (206) 447-1427  
casey@seattlecriminalattorney.com

*DANCE SENTENCING MEMORANDUM* (CR15-00349RSM) – 12

Law Offices of Cassandra Stamm, PLLC  
The Central Building  
810 Third Avenue, Suite 500  
Seattle, Washington 98104  
tel: (206) 264-8586  
fax: (206) 447-1427